# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Crim No. 0:19-cr-60379-RS-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

QUINCY JEROME ADDERLY,

Defendant.

_____/

FILED BY _____ D.C.

DEC 0 2 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO
## 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018

COMES Defendant, QUINCY JEROME ADDERLY ("Adderly"), appearing *pro se,* and in support of this memorandum would show as follows:

## I.    STATEMENT OF JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States,* 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States,* 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon,* 130 S.Ct. at 2690–91.

1



## II.    PROCEDURAL HISTORY

### A.    Procedural Background

On December 17, 2019, the grand jury sitting in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, returned a three (3) count Indictment charging Adderly. See Doc. 3.[1] Count 1 charged Adderly with Possession with Intent to Distribute A Mixture and Substance Containing A Detectable Amount of Cocaine, Heroin, Eutylone, and Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(1)(D). *Id.* Count 2 charged Adderly with Possession of A Firearm in Furtherance of A Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *Id.* Count 3 charged Adderly with Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). *Id.* The Indictment also contained Forfeiture Allegations, pursuant to 18 U.S.C. § 924(d)(1) and 21 U.S.C. § 853. *Id.*

On March 18, 2020, a Change of Plea Hearing was held and Adderly pled guilty to Counts 1 and 3 of the Indictment, pursuant to a written Plea Agreement. See Docs. 21, 22.

On March 3, 2022, Adderly was sentenced to a total term of 188 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 60, 61.

On March 25, 2024, Adderly filed a Motion to Reduce Sentence re: 821 Amendment/782, which was denied on May 7, 2024. See Docs. 64, 71.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Southern District of Florida, Fort Lauderdale Division in Criminal No. 0:19-cr-60379-RS-1, which is immediately followed by the Docket Entry Number.

**B.    Statement of the Facts**

1.    Offense Conduct

The United States and Adderly, through the advise of his counsel, agreed to the following Factual Proffer:

> On the afternoon of March 25, 2019, authorities executed a search warrant at the Defendant's apartment in Lauderhill, Florida. Inside the apartment, authorities found and seized an Arminius ARM .357 caliber revolver, a Pioneer Arms Hellpup AKM-47 semiautomatic firearm, and over 150 rounds of ammunition in various calibers. Authorities also found and seized controlled substances in amounts inconsistent with personal use. Subsequent laboratory tests showed that these controlled substances were marijuana, cocaine, heroin, and Eutylone. Some of the cocaine and heroin were in the Defendant's bedroom closet inside a satchel that contained documents that bore the Defendant's name. Nearby in the same bedroom closet, authorities found and seized the AKM-47 firearm and $8,619 in currency. The currency included Lauderhill Police Department ("LPD") investigative funds that had been used in prior LPD-initiated controlled narcotics purchases.
>
> After obtaining the Defendant's DNA standard pursuant to a search warrant, authorities submitted the Defendant's DNA for comparison against DNA samples obtained from the evidence recovered from the Defendant's apartment. The DNA comparison showed that the Defendant's DNA matched DNA found on the grips and sights of the AKM-47 firearm and the .357 caliber revolver, as well as DNA found on a box that had contained controlled substances in individually packaged bags. Both firearms were operational and manufactured outside the United States.

See 23 at 1-2.

2.    Plea Proceeding

On March 18, 2020, a Change of Plea Hearing was held before Judge Rodney Smith. See Doc. 21. Adderly pled guilty to Counts 1 and 3 of the Indictment, pursuant to a written Plea Agreement. See Doc. 22. In exchange for Adderly's guilty plea, (a) the government agreed to move to dismiss the remaining count of the indictment and (b) the government would recommend a 3-level reduction for acceptance of responsibility, pursuant to USSG §§ 3E1.1(a) and (b). *Id.*

3.    Sentencing Proceeding

On March 3, 2022, a Sentencing Hearing was held before Judge Rodney Smith. See Doc. 60.

At sentencing, the District Court sentenced Adderly to 188 months as to each Count 1 and 3, to run

concurrently, for a total term of 188 months' imprisonment. See Doc. 61. It is followed by 5 years

of Supervised Release. *Id.* The Court also ordered payment of aa  Mandatory Special Assessment

Fee of $200. *Id.* No direct appeal was filed in this case.

## III. DISCUSSION

As a preliminary matter, respectfully requests that this Court be mindful that *pro se*

complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and

should therefore be liberally construed. See *Caldwell v. Warden,* 748 F.3d 1090 (11th Cir. 2014);

*Estelle v. Gamble,* 429 U.S. 97 (1976) (same); and *Haines v. Kerner,* 404 U.S. 519 (1972) (same).

### A.    **Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence**

This Court has the power to adjust Adderly's sentence. District courts no longer need a

motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release

provisions of 18 U.S.C. §3582(c)(1)(A)(i). A district court may now resentence if the inmate files

a motion after exhausting administrative remedies. The reasons that can justify resentencing are not

limited to medical, age, or family circumstances. A district court may resentence if the inmate

demonstrates extraordinary and compelling reasons for a sentence reduction. Such reasons are

present in this case.

### 1.    Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of

the Comprehensive Crime Control Act of 1984. That legislation provided that a district court could

4

modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. §3582(c)(1)(A)(i). In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court. Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence. Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole. Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment. S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. § 3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system. *Id*. at 121. The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment for "extraordinary and compelling reasons" and [would allow courts] to respond to changes in the guidelines." *Id*. Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

2.     <u>Section 3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances</u>

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. § 994(t) ("The Commission…shall describe what should be considered "extraordinary and compelling reasons" for

sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the Guidelines Manual and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2023, for these amendments:

(b) *Extraordinary and Compelling Reasons.–* Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) *Medical Circumstance of the Defendant.–*

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.

(B) The defendant is—

(i) suffering from a serious physical or medical condition,

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of

6

serious deterioration in health or death.

(D)    The defendant presents the following circumstances—

    (i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    (ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    (iii)    such risk cannot be adequately mitigated in a timely manner.

(2)    *Age of the Defendant.*— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3)    *Family Circumstances of the Defendant.*—

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family

member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4)   *Victim of Abuse.*— The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

    (A)   sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

    (B)   physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions); that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant. For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5)   *Other Reasons.*— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6)   *Unusually Long Sentence.*— If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This amendment responds to, among other things, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, which amended 18 U.S.C. §

8

3582(c)(1)(A) to authorize courts to grant a motion for a sentence reduction upon a defendant's own motion. Previously, a court was authorized to do so only upon the motion of the Director of the Bureau of Prisons ("BOP"). Congress amended the law for the express purpose, set forth on the face of the enactment, of "increasing the use" of sentence reduction motions under section 3582(c)(1)(A). First Step Act § 603(b).

      3.    <u>The First Step Act</u>

      The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release. *Id.* at § 603. Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant." A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion. Congress labeled this change "Increasing the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018). Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199 at S7774 (Dec. 18, 2018). In the House, Representative Nadler noted that the First Step Act includes "a number of very positive changes, such as … improving application of compassionate release, and providing other measures to improve the welfare of federal inmates." 164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction. Judicial authority is no longer limited to cases that have the approval of the BOP.

>    4.    Adderly Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

Adderly has filed a request for compassionate release to the Warden at FCI Butner Medium II, but he has not received a response yet. Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Adderly's behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

>    **B.    The Changes in Relevant Law, along with Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Are Extraordinary and Compelling Circumstances That Warrant Release.**

Section 3582(c) states that a district court cannot modify a term of imprisonment once it has been imposed except that, in any case:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)     extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A).

In this case, there are at least three extraordinary and compelling reasons warranting such a reduction, discussed as follows:

     1.     <u>Adderly's Prior Convictions Do Not Qualify Him as an ACCA Offender Requiring Resentencing Without the ACCA Offender Enhancement.</u>

In order for the ACCA enhancement to apply, the instant offense of conviction must be a violation of 18 U.S.C. 922(g) and the defendant must have at least three prior convictions for a "violent felony" or "serious drug offense," or both, committed on occasions different from one another. The terms "violent felony" and "serious drug offense" are defined in 18 U.S.C. 924(e)(2). Said definitions are not identical to those contained in the guidelines manual. Further, the time periods for the counting of prior sentences under U.S.S.G. 4A1.2 are not applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. 944(e).

Prior convictions used to enhanced Adderly's sentence under the ACCA guidelines:

1)     03/1998: Aggravated Battery (Case No. 96-21568CF10B), in Open Court at Broward County, FL.;

2)     03/1998: Possession with Intent to Sell or Deliver Cocaine (Case No. 98-2057CF10A), in Open Court at Broward County, FL.; and

3)     04/2002: Felony Battery (Case No. 01-10271CF10A), in Open Court at Broward County, FL.

The ACCA imposes a mandatory minimum term of 15 years in prison for anyone convicted of violating 18 U.S.C. § 922(g), which includes possession of a firearm by a convicted felon, if the defendant has three prior convictions for a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). Courts have interpreted these statutory terms through the "categorical approach"

announced by the Court in *Taylor v. United States*, 495 U.S. 575 (1990). Under the categorical approach, courts look to the statutory elements of an offense, rather than the facts of the defendant's actual conduct, when determining whether a prior conviction meets the statutory definition for enhanced prison term sentences.

Adderly argues that his prior 1998 convictions do not qualify as predicate offenses under the ACCA guideline for reasons stated as follows:

i.     First Step Act of 2018: Sentencing Reform

The First Step Act makes several changes to federal sentencing law. The act reduced the mandatory minimum sentences for certain drug offenses, expanded the scope of the safety valve, eliminated the stacking provision, and made the provisions of the Fair Sentencing Act of 2010 (P.L. 111-220) retroactive.

The act adjusts the mandatory minimum sentences for certain drug traffickers with prior drug convictions. The act reduces the 20-year mandatory minimum (applicable where the offender has one prior qualifying conviction) to a 15-year mandatory minimum and reduces the life sentence mandatory minimum (applicable where the offender has two or more prior qualifying convictions) to a 25-year mandatory minimum. The act also changes the prior conviction criteria under which these mandatory minimum penalties apply. In order for these mandatory minimums to apply, the offender's prior convictions must meet the new criteria of a serious drug felony or a serious violent felony rather than any felony drug offense.

A "serious drug felony" is defined as an offense described in 18 U.S.C. Section 924(e)(2)—which encompasses only drug felonies that carry a maximum prison term of 10 years or more—for which the offender served a term of imprisonment of more than 12 months and the

12

**offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.** Before the First Step Act, any prior conviction for a felony drug offense (meaning a drug offense with a maximum term of imprisonment of more than one year) counted for purposes of the repeat offender mandatory minimums.

A "serious violent felony" is defined as an offense described in 18 U.S.C. Section 3559(c)(2) for which the offender served a term of imprisonment of more than 12 months and any offense that would be a felony violation of 18 U.S.C. Section 113 if the offense were committed in the special maritime and territorial jurisdiction of the United States, for which the offender served a term of imprisonment of more than 12 months. Before the First Step Act, only drug felony convictions counted for purposes of the repeat offender mandatory minimums.

After the passage of the First Step Act, Case Nos. 96-21568CF10B and 98-2057CF10A cannot be used as ACCA predicates because Adderly's release from the term of imprisonment imposed on both cases were outside the 15-year period described in 18 U.S.C. Section 924(e)(2). Accordingly, Adderly's sentence cannot be enhanced under the ACCA guideline if he does not have at least 3 prior convictions of either a "violent felony" or "serious drug offense".

       2.    *Borden v. United States*, 141 S. Ct. 1817, 2021 wl 2367312 (2021)

On June 10, 2021, the U.S. Supreme Court issued *Borden*, a federal sentencing enhancement case with important implications for immigration law. In *Borden*, the Court held that crimes that include a mens rea of recklessness cannot qualify as "violent felonies" under the Armed Career Criminal Act's (ACCA) elements clause. In doing so, the Court effectively held that the similarly-worded definition of a "crime of violence" under 18 U.S.C. § 16(a) excludes crimes with a recklessness mens rea. Section 16(a) is referenced in the aggravated felony crime of violence and

13

crime of domestic violence definitions in the Immigration and Nationality Act (INA).

Although *Borden* addressed the scope of the definition of a "violent felony" under the ACCA, the Court's plurality decision expressly noted that it is reaching a question left open by two prior Supreme Court decisions: whether reckless crimes qualify as crimes of violence under 18 U.S.C. § 16. Slip op. at 7. *Borden* reverses adverse case law in the Fifth, Sixth, Eighth, and Tenth Circuits. The decision effectively abrogates case law supporting the proposition that crimes of violence under § 16(a) encompass crimes with a recklessness mens rea.

*Divisibility*

> Reckless crimes are categorically not crimes of violence, assuming that the statute at issue covers reckless conduct exclusively, or is indivisible between mental states. In determining whether a statute of conviction that includes a reckless mens rea is a crime of violence, it is crucial for advocates to analyze divisibility under *Mathis v. United States*, 136 S. Ct. 2243 (2016). If a statute of conviction exclusively includes reckless (or less than reckless) mens rea, then it is categorically not a crime of violence under a properly applied categorical approach analysis. A statute of conviction that lists a recklessness mental state as well as higher mens rea, such as knowledge or intent, may in some cases still trigger the crime of violence immigration consequences if the various mental states listed are describing separate criminal offenses (divisible statute) rather than a single crime (indivisible statute).

The ACCA imposes a fifteen year minimum sentence for persons found guilty of illegally possessing a gun if they have three or more prior convictions for a "violent felony." 18 U.S.C. § 924(e)(2)(B). A violent felony under the ACCA's so-called 'elements clause' is defined as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). This definition is identical to § 16(a) except the ACCA's elements clause does not cover property crimes; it excludes the phrase "or property." See *Borden*, slip op. at 6.

14

In *Borden*, the Court addressed the question of whether crimes that include reckless mental states qualify as violent felonies under the ACCA's elements clause. The petitioner, Charles Borden, Jr., challenged his sentence enhanced under the ACCA because one of the three prior convictions found to be predicate violent felonies was a reckless aggravated assault under Tennessee law. Mr. Borden argued that his Tennessee conviction was not a violent felony under the ACCA because it criminalized reckless conduct. He lost this argument at the District Court and at the Sixth Circuit.

The Court reversed the Sixth Circuit decision and held that reckless crimes do not qualify as violent felonies under the ACCA's elements clause. Justice Kagan wrote the plurality opinion—which was joined by Justices Breyer, Sotomayor, and Gorsuch. Justice Thomas did not join Justice Kagan's opinion but concurred in the judgment.

In *Borden*, Police caught Charles Borden, Jr., with a pistol during a traffic stop in April 2017, and he subsequently pleaded guilty possessing that firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the government recommended sentencing Borden as an armed career criminal, under the Armed Career Criminal Act (ACCA), based on three prior Tennessee aggravated assault convictions. Borden objected, arguing that one of his prior convictions—reckless aggravated assault—did not qualify as a "violent felony" under the "use of force" clause of the ACCA. Borden argued that reckless aggravated assault requires only a mental state of recklessness, and reckless use of force does not amount to a crime of violence under the ACCA. Retroactively applying Sixth Circuit precedent holding that reckless aggravated assault does constitute a violent felony under the "use of force" clause of the ACCA, the district court held that all three of Borden's aggravated assault victims constituted "crime[s] of violence" under the ACCA and designated him as an armed career criminal. The U.S. Court of Appeals for the Sixth Circuit affirmed.

15

The "use of force" clause in the Armed Career Criminal Act (ACCA) does not encompass reckless aggravated assault. Justice Elena Kagan authored the four-justice plurality opinion. Justice Clarence Thomas concurred in the judgment to reverse and remand the case.

The elements clause of the ACCA defines "violent felony" as an offense requiring the "use of physical force against the person of another." According to the plurality, the phrase "against another" requires conduct directed at another individual. Recklessness, which is the disregard of a substantial and unjustifiable risk, cannot be directed at another individual and so cannot meet the definition of a violent felony.

Justice Thomas authored an opinion concurring in the judgment, reasoning that reckless aggravated assault is not a violent felony under the ACCA because the "use of physical force...has a well-understood meaning applying only to intentional acts designed to cause harm." Justice Thomas argued that the reckless conduct at issue in this case falls within the ACCA's residual clause, which the Court (erroneously, in his view) struck down.

The Supreme Court decided *Borden*, an ACCA case, on June 10, 2021, three months after the Second Circuit's en banc decision in *Scott*. The Court's plurality opinion held that a predicate offense requiring only a *mens rea* of recklessness cannot count as a "violent felony" under the elements clause of the ACCA. 141 S.Ct. at 1832, 2021 WL 2367312, at *11. That opinion did not command a majority of the Court. *Borden* achieved a 5-4 result only because Justice Thomas concurred in the judgment but on the basis of a different theory.

The holding in *Borden*, the plurality opinion's reasoning is instructive in deciding whether to apply the elements clause of a sentence-enhancing statute. "To decide whether an offense satisfies the elements clause, " the Court said in Borden, "courts use the categorical approach, "which "means

16

asking whether a state offense necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" 2021 WL 2367312, at *3 (citations omitted). "If any - even the least culpable - of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate." *Id.* The *Borden* plurality held that offenses with a mens rea of recklessness do not qualify as violent offenses under the ACCA because "[t]hey do not require, as ACCA does, the active employment of force against another person." *Id.* at *12.

Thus, in light of *Borden,* the Court should consider and resentence Adderly.

### 3. Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

With respect to the need to avoid unwarranted sentencing disparities,  Adderly urges the Court to consider the *Redd* cases:

- *United States v. Clark*, Case No. 11-CR-30-2-JPS (E.D. Wis. Jul. 23, 2020) quoting that in *Redd*, the Court evaluated whether extraordinary and compelling reasons existed to reduce the sentence by considering (1) the sentence the defendant originally received compared to the one he would receive today; (2) the disparity between those sentences; and (3) the reason for that disparity. *Redd*, 2020 WL 1248493, at *5. There, the court determined that the disparity was "primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary." *Id.* at *6.

- *United States v. Brooks*, Case No. 07-cr-20047-JES-DGB (C.D. Ill. May. 15, 2020) quoting that in *Redd*, the district court held "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) and that the reasons it has determined in this case constitute extraordinary and compelling reasons warranting a sentence reduction satisfy any requirement for consistency with any applicable policy statement."

Adderly is now, in effect, to be re-sentenced today, after the passage of the First Step Act; and the need to avoid unwarranted sentencing disparities is to be assessed at the time of his sentencing today relative to those comparable offenders who have been sentenced following the passage of the First Step Act based on the need to avoid unwarranted sentencing disparities, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.

Adderly essentially argues that the unwarranted sentencing disparity factor must be determined only with reference to those comparably situated defendant who was sentenced after Adderly's sentencing and those being sentenced today under a different sentencing structure. Adderly's sentence in 2022 is now disparate relative to Defendants who were sentenced post-*FSA*.

See e.g., *United States v. Vazquez-Rivera*, 470 F.3d 443, 449 (1st Cir. 2006) (recognizing that "a district court may consider disparities among co-defendants in determining a sentence"); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."); *United States v. Gomez*, 215 F. App'x 200, 202 (4th Cir. 2007) (implying that consideration of co-defendant disparities is allowed, but concluding that Gomez was not similarly situated to the co-defendant); *United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) ("[A]voiding unwarranted sentencing disparities among co-defendants is a valid sentencing consideration."), cert. denied, 11-9109, 2012 WL 733887 (Apr. 2, 2012); *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007) ("A district judge, however, may exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."); *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) ("Pulley properly contends that § 3553(a)(6) does not allow

unwarranted sentencing disparities between co-defendants." (citing *Statham*, 581 F.3d at 556; *Bartlett*, 567 F.3d at 908–09)); *United States v. Lazenby*, 439 F.3d 928, 933 (8th Cir. 2006) (invalidating a sentence that resulted in unwarranted disparities between the sentences of the defendant and less culpable members of related conspiracies); *United States v. Saeteurn*, 504 F.3d 1175, 1181–83 (9th Cir. 2007) (upholding as a legitimate generalized § 3553(a) consideration the district court's decision to compare defendant with his co-defendants and sentence him in accordance with his role); *United States v. Smart*, 518 F.3d 800, 804 (10th Cir. 2008) ("[A] district court may also properly account for unwarranted disparities between codefendants who are similarly situated, and...the district court may compare defendants when deciding a sentence."); *United States v. Zavala*, 300 F. App'x 792, 795 (11th Cir. 2008) ("It is not erroneous for the district court to have considered the 'unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' when the statute specifically mandates such consideration."); *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (considering and rejecting an argument that a disparity between co-defendants' sentences was unwarranted), cert. denied, 131 S. Ct. 586 (2010).

Under 18 U.S.C. § 3582(c)(2), to modify Adderly's sentence, taking into account the advisory nature of the guidelines after *Booker* and the considerations set forth in 18 U.S.C. § 3553(a). The court should find that a reduced sentence without the ACCA enhancement, is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law.

Accordingly, this motion should be granted.

## IV. CONCLUSION

For the foregoing reason, Adderly prays this Court would consider his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, without the ACCA enhancement, based upon the "extraordinary and compelling reasons" and reduce his sentence.

Respectfully submitted,


Dated: November **25**, 2025.

*Mr. Quincy J. Adderly*
QUINCY JEROME ADDERLY
REG. NO. 25997-104
FCI BUTNER MEDIUM II
FEDERAL CORR. INSTITUTION
P.O. BOX 1500
BUTNER, NC 27509

### CERTIFICATE OF SERVICE

I hereby certify that on November **25**, 2025, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 via U.S. Mail, postage prepaid, to:

Mr. Kiran Narayan Bhat
Keller Postman LLC
2333 Ponce De Leon Boulevard, Suite R-240
Coral Gables, FL 33134

Ms. Alicia E. Shick
United States Attorney's Office
500 E. Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33394


*Mr. Quincy J. Adderly*
QUINCY JEROME ADDERLY

20

QUINCY JEROME ADDERLY
REG. NO. 25997-104
FCI BUTNER MEDIUM II
FEDERAL CORR. INSTITUTION
P.O. BOX 1500
BUTNER, NC 27509

November 25, 2025

Ms. Angela E. Noble
Clerk of Court
U.S. District Court
Southern District of Florida
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301

     RE:   *Adderly v. United States*
           Crim No. 0:19-cr-60379-RS-1

Dear Ms. Noble:

    Enclosed please find and accept for filing Movant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                              Sincerely,

                              *Mr. Quincy A. Adderly*
                              QUINCY JEROME ADDERLY
                              Appearing *Pro Se*

*Encl. as noted*

QUINCY JEROME ADDERLY
REG. NO. 25997-104
FCI BUTNER MEDIUM II
FEDERAL CORR. INSTITUTION
P.O. BOX 1500
BUTNER, NC 27509

November 25, 2025

Ms. Angela E. Noble
Clerk of Court
U.S. District Court
Southern District of Florida
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301

     RE:  *Adderly v. United States*
          Crim No. 0:19-cr-60379-RS-1

Dear Ms. Noble:

    Enclosed please find and accept for filing Movant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                    Sincerely,

                    *Mr. Quincy J. Adderly*
                    QUINCY JEROME ADDERLY
                    Appearing *Pro Se*

*Encl. as noted*

QUINCY JEROME ADDERLY
REG. NO. 25997-104
FCI BUTNER MEDIUM II
FEDERAL CORR. INSTITUTION
P.O. BOX 1500
BUTNER, NC 27509

November ___, 2025

Ms. Angela E. Noble
Clerk of Court
U.S. District Court
Southern District of Florida
299 East Broward Boulevard #108
Fort Lauderdale, FL 33301

      RE:   *Adderly v. United States*
             Crim No. 0:19-cr-60379-RS-1

Dear Ms. Noble:

    Enclosed please find and accept for filing Movant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018. Please submit this document to the Court.

    Thank you for your assistance in this matter.

                       Sincerely,


                       _____
                       QUINCY JEROME ADDERLY
                       Appearing *Pro Se*

*Encl. as noted*

Mr. Quincy T. Ashby #25997-104
F.C.I Butner #2
P.O. Box 1500
Butner, NC 27509
Federal Correctional Institution

Legal mail



Ms. Angela. E. Noble
Clerk of Court
U.S District of Florida
299 East Broward Blvd. #108
Ft. Lauderdale, Florida 33301.

Legal mail

FEDERAL CORRECTIONAL INST. #2
P.O. BOX 1500
BUTNER, NORTH CAROLINA 27509

DATE: _____ 11-26-25 _____

"SPECIAL/LEGAL MAIL"

The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has been
neither opened or inspected. If the writer raises a question
or concern over which this facility has jurisdiction, you
may wish to return the material for further information
or clarification. If the writer enclosed correspondence for
forwarding to another addressee; please return the enclosed
to the above address.