**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CR-60379-SMITH**

**UNITED STATES OF AMERICA**

**v.**

**QUINCY JEROME ADDERLY,**
**a/k/a "Terry Johnson,"**
**a/k/a "Q,"**

**Defendant.**
______________________________________/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018**

The United States of America responds to Defendant Quincy Jerome Adderly ("Defendant" or "Adderly"), motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A) based on his argument that changes in the law—namely the First Step Act—created an unwarranted sentencing disparity. For the reasons below, the Court should deny Defendant's motion.

## I. BACKGROUND

In March 2019, the Lauderhill Police Department ("LPD") conducted two controlled narcotics purchases at an apartment complex in Lauderhill, Florida. (Presentence Investigation Report ("PSI"), ECF No. 31 ¶¶ 7–8). Both times, the target sold an LPD informant marijuana. (PSI ¶¶ 7–8). During the second transaction, the target claimed not to have any more marijuana to sell, then walked to and back from Adderly's apartment to retrieve more marijuana to complete the sale. (PSI ¶ 8). After this second transaction, the target suggested to the informant that other drugs, including cocaine, were available at Adderly's residence. (PSI ¶ 8).

LPD executed a search warrant at Adderly's residence on March 25, 2019. (PSI ¶¶ 9–16). Adderly was not home, but inside, officers found narcotics, firearms, and ammunition. (PSI ¶ 10).

Adderly had marijuana and Eutylone in a container atop a microwave in the kitchen. (PSI ¶ 11). He had heroin and cocaine inside a satchel in his bedroom closet, a satchel that also contained documents and a pill bottle bearing his name. (PSI ¶ 11). Adderly kept a loaded Arminius ARM .357 revolver under his pillow, a loaded and stolen Pioneer Arms Hellpup AKM-47 semiautomatic pistol in his bedroom closet, and six boxes of ammunition in various calibers throughout his bedroom and bedroom closet. (PSI ¶¶ 12–13). He also had $8,619 in currency, including some of the same bills that had been used in LPD's controlled purchase earlier in the month, tucked inside a shoe in his bedroom closet. (PSI ¶¶ 12–13). A DNA comparison showed a match between swabs taken from the drug container atop the microwave, the firearms inside the residence, and Adderly's person after his arrest on April 12, 2019. (PSI ¶ 14).

Before March 25, 2019, Adderly had multiple Florida felony convictions in the Seventeenth Judicial Circuit in and for Broward County, for which he had served years in prison. (PSI ¶¶ 37–55). Many of these convictions clustered in Adderly's late teens and twenties and involved his possession of illegal narcotics or operation of vehicles without a valid license. (PSI ¶¶ 37–43, 45–46, 48, 49, 51–55). Three of the convictions, however, were for weightier charges: (1) aggravated battery in Case No. 96-21568CF10B; (2) possession with intent to sell or deliver cocaine in Case No. 98-2057CF10A; and (3) felony battery in Case No. 01-10271CF10A. (PSI ¶¶ 44, 47, 50); *see also* ECF No. 36-1, 36-2, 36-3. The incidents supporting these three convictions occurred on separate dates. (PSI ¶¶ 44, 47, 50).

The grand jury in this case returned an indictment against Adderly on December 17, 2019, charging possession with intent to distribute cocaine, heroin, Eutylone, and marijuana (Count 1); possession of a firearm in furtherance of a drug trafficking crime (Count 2); and possession of a firearm and ammunition by a convicted felon (Count 3). (ECF No. 3). Pursuant to a plea agreement and factual proffer, Adderly pled guilty to Counts 1 and 3. (ECF Nos. 21–23). The government

agreed to dismiss Count 2 after sentencing, removing the prospect of a mandatory consecutive term of 60 months' imprisonment. (PSI ¶¶ 3, 104).

On March 3, 2022, after years of continuances to accommodate Adderly's serious presentencing medical problems, the Court sentenced Adderly to 188 months' imprisonment, at the low-end of the advisory guidelines range. (ECF No. 61). During sentencing, Adderly's counsel acknowledged Adderly's criminal history, and that Adderly was legally eligible for an enhanced sentence under the Armed Career Criminal Act. (ECF No. 63 at 6:12-23). The Court explained that it reached this sentence after considering the recommendation of the parties and the "serious offenses" Adderly committed when he was younger. (*Id.* at 21:4-13).

Adderly agreed to waive his right to appeal his sentence and did not file a direct appeal of his conviction or sentence. On March 25, 2024, the Court docketed Adderly's Compassionate Release Motion and Motion for Appointment of Counsel, which the United States responded to on April 9, 2024. (ECF Nos. 64–67). The Court denied the request on May 7, 2024. (ECF No. 71).

As of this filing, Adderly continues to serve his sentence in the custody of the Federal Bureau of Prisons ("BOP") at Federal Correctional Institution Butner Medium II in Butner, North Carolina ("FCI Butner Medium II"). Adderly is currently slated for a March 22, 2033 release.[1]

Adderly's Motion notes that he filed a request for compassionate release to the Warden at FCI Butner Medium II, but has not received a response yet. (ECF No. 72 at 10). Adderly states, "Because 30 days have lapsed from the receipt of the request and the BOP failed to file a motion on Adderly's behalf, exhaustion of administrative remedies is not an issue in this case." (*Id.*).

[1] *See* https://www.bop.gov/inmateloc/.

## II. LEGAL STANDARD

Under section 3582(c)(1)(A)(i), Congress enacted a narrow exception to permit the courts to reduce a term of imprisonment (1) if the defendant demonstrates there are "extraordinary and compelling reasons" for a sentence reduction or the defendant is at least 70 years old and has served at least 30 years in prison; (2) the relief is consistent with the Commission's relevant policy statements in U.S.S.G. § 1B1.13 and the applicable 18 U.S.C. § 3553(a) factors; and (3) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).[2] Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons." 28 U.S.C. § 994(t). On November 1, 2023, the Commission amended the policy statement to six categories that could constitute extraordinary and compelling reasons for a sentence reduction: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons; and (6) unusually long sentence. U.S.S.G. § 1B1.13(b). Defendant only raises his alleged "unwarranted sentencing disparity" as grounds for his motion. Therefore, although he does not cite specifically to (b)(6), it appears to be the only subsection that, if valid, would apply.

Subsection (b)(6) provides that "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in

[2] The 18 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish certain aims, such as to reflect the seriousness of the offense, afford adequate deterrence, protect the public, or the defendant's educational, medical, or correctional treatment needs; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwanted disparities among defendants; and (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a); *see also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) ("compassionate release is discretionary, not mandatory, and c[an] be refused after weighing the sentencing factors of 18 U.S.C. [section] 3553(a).") (alterations added).

determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." § 1B1.13(b)(6).

Notably, in this circuit, courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) ("[W]e hold that [§] 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13."). Additionally, the defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton,* 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)); *United States v. Lonergan*, 2022 WL 426487, at *5 (S.D. Fla. Feb. 11, 2022).

## III. ARGUMENT

### A. Administrative Remedy Exhaustion

Before a defendant files a motion under Section 3582(c)(1)(A), he must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or [until] the lapse of 30 days from the receipt of such a request by the warden of [his] facility…." *See* 18 U.S.C. § 3582(c)(1)(A). Thus, exhaustion is a mandatory prerequisite to a defendant filing a compassionate release motion with the Court.

Although exhaustion is not a "jurisdictional requirement," we must determine whether the petitioner has properly exhausted his remedies "if the respondent properly asserts the defense." *Santiago-Lugo*, 785 F.3d 467, 475 (11th Cir. 2015). To exhaust his administrative remedies, a petitioner "must properly take each step within the administrative process" his prison facility has

implemented. *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Administrative law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits).'" (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Although Defendant filed a Reduction in Sentence request with the warden on October 14, 2025, he did not address the claim he raises here. *See* Exhibit "1" (RIS October 14, 2025). Defendant requested a reduction in sentence based on an alleged terminal medical condition, which the warden denied. *See* Exhibit "2" (Warden's response). Therefore, Defendant has not exhausted his administrative remedies as to his current claim, and thus the Court lacks jurisdiction to entertain his motion. Alternatively, even if the Court had jurisdiction to hear Defendant's motion, it would fail substantively.

**B. Defendant's Argument That An Unwarranted Sentencing Disparity Exists Is Misplaced.**

Defendant argues that if he were to be sentenced today, the First Step Act would provide "a different sentencing structure" resulting in a lower sentence (ECF No. 72 at 18). He argues that his "prior 1998 convictions do not qualify as predicate offenses under the ACCA guidelines[.]" (*Id.* at 12).[3] In support, Defendant states that these "cannot be used as ACCA predicates because Adderly's release from the term of imprisonment imposed on both cases were outside the 15-year period described in 18 U.S.C. Section 924(e)(2)." (*Id.*at 13). Defendant also appears to argue that these offenses would no longer qualify as ACCA predicates under *Borden v. United States*, 141 S. Ct. 1817 (2021). This is not the case.

[3] Defendant does not appear to challenge that his conviction for felony battery is a valid ACCA predicate.

Title 18, United States Code, Section 924(e)(2)(B) defines an ACCA predicate "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" With respect to Defendant's 1998 conviction for aggravated battery in violation of Section 784.045 of the Florida Statutes, this is a "violent felony" ACCA predicate because the statute has an element the use, or attempted use, or threatened use of physical force. This was the case at the time of Defendant's sentencing, and it has not changed since. *See United States v. Lynch*, No. 16-12638, 2023 WL 4882460, at *5 (11th Cir. Aug. 1, 2023) ("While we have not specifically addressed Florida's aggravated battery statute in light of *Borden*, we have previously held that aggravated battery under § 784.045 is a specific intent crime" and concluding that "binding precedent dictates that Lynch's convictions for aggravated assault with a deadly weapon and aggravated battery on a law enforcement officer with a deadly weapon qualify as predicate offenses under . . . ACCA[.]"); *United States v. Vereen*, 920 F.3d 1300, 1314 (11th Cir. 2019) ("Florida aggravated battery . . . qualifies as an ACCA predicate").

Separately, Title 18, United States Code, Section 924(e)(2)(A)(ii) defines an ACCA predicate "serious drug offense" to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." In *Brown v. United States*, the Supreme Court held that "a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense." *Brown v. United States*, 602 U.S. 101, 123 (2024). In other words, "a prior state drug conviction constitutes an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Id.* at 119.

Here, Defendant's 1998 arrest and conviction for possession with intent to sell or deliver cocaine still qualifies as an ACCA predicate because the drugs on the federal and state schedules matched when the offense was committed. *United States v. Jackson*, 55 F.4th 846, 851 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101 (2024) (noting that Florida's definition of cocaine included ioflupane until July 2017, that ioflupane had been removed from the federal drug schedule in September 2015, but as such, Jackson's 1998 conviction under Section 893.13(1) did not reach more conduct with respect to cocaine than ACCA's "serious drug offense").

Thus, both of Defendant's prior 1998 convictions remain valid ACCA predicates. If sentenced today, these offenses would continue to qualify as ACCA predicates and Defendant would still be subject to a minimum term of imprisonment of 15 years. In sum, Defendant cannot point to any disparity in his sentence—much less a "gross disparity"—to qualify for relief under (b)(6), assuming its validity. Therefore, his claim that an unwarranted sentencing disparity exists is without merit.

Furthermore, the government maintains its position that the Sentencing Commission exceeded its authority in promulgating subsection (b)(6), and acted contrary to the statute's plain text, structure, and purpose. No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass changes in law. As a matter of plain language, a nonretroactive change to a statutory provision is neither "extraordinary" nor "compelling." The word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc).

Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced and the law that remains in place today. Similarly, the word "[c]ompelling" should be understood to provide a "forcing, impelling,

[or] driving" reason to disturb the finality of a federal sentence. *McCall*, 56 F.4th at 1055. To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. *See Dorsey v. United States*, 567 U.S. 260, 280 (2012) (noting that "the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (finding that this practice suggests a "presumption against retroactive legislation" that is "deeply rooted in our jurisprudence" and that "embodies a legal doctrine centuries older than our Republic.").

In other words, there is nothing extraordinary and compelling about the fact Defendant's sentence reflects the statutory penalty that existed at the time he was sentenced and that still exists today. That sentence "was not only permissible, but statutorily required at the time." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring) ("Indeed, the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce that same sentence."); *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

Even if subsection (b)(6) represented a valid exercise of the Commission's delegated authority—which the government maintains it does not—(b)(6) does not apply to Defendant by its own terms. Indeed, Defendant points to no change in law that would produce any disparity, much less a "gross disparity" between the sentence being served and the sentence likely to be imposed today, which would be identical. Today, the very same prior convictions that this Court determined were § 924(e) predicates continue to qualify him for the enhanced statutory and guidelines' penalties under ACCA.

**C. The Section 3553 Factors Weigh Against Any Sentencing Reduction.**

Even if Defendant were entitled to relief under (b)(6) or 1B1.13, the Court should decline to exercise its discretion to reduce his sentence due to the Section 3553(a) factors. His request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community, or otherwise merits release under the § 3553(a) factors. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton,* 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)); *United States v. Lonergan*, No. 19-60131-CR, 2022 WL 426487 at *5 (S.D. Fla. Feb. 11, 2022).

If this Court grants early release, it will result in a sentence that does not reflect the seriousness of his underlying offense, promote respect for the law, provide just punishment, and provide general deterrence to criminal conduct. *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (stating that "compassionate release is discretionary, not mandatory, and c[an] be refused after weighing the sentencing factors of 18 U.S.C. [section] 3553(a)"); *see also United States v. Cook*, 998 F.3d 1180, 1185 (11th Cir. 2021) (citing *United States v. Douglas*, 576 F.3d 1216, 1220 (11th Cir. 2009) (quotations omitted) ("…when considering a motion under § 3582(c)(1)(A)(i), [the district court] must ensure that the record reflects that it considered the [applicable] § 3553(a) factors.").

As an armed career criminal, Defendant's criminal history presents a significant obstacle to meet his burden of proving he is no longer a danger to the community. Defendant's criminal history includes aggravated battery wherein during an altercation with the victim, he picked up an

axe handle and proceeded to strike the victim several times (PSI ¶ 44). Adderly also has a felony battery and possession of a firearm by a convicted felon conviction, wherein he beat up his girlfriend, and she suffered a contusion on her lip and was missing hair (PSI ¶ 50). According to the arrest report, Adderly's girlfriend stated she had an argument with Adderly and left the home with her children to eat at a Chinese's restaurant. *Id.* Adderly went to the restaurant and demanded that she leave with him. *Id.* When his girlfriend refused, Adderly went to his car and retrieved a gun. *Id.* The victim attempted to hide in the restaurant, however, Adderly located her and struck her in the face with the gun, knocking her to the ground. *Id.* Adderly then grabbed the victim by her hair and attempted to pull her out of the restaurant. *Id.* When a good Samaritan attempted to intercede, Adderly hit the victim with the weapon twice. *Id.*

With nine criminal history points, the nature of his violent history, the nature of the instant offense of conviction, and having served less than half his sentence, Defendant remains a danger to the community. Moreover, Defendant's disciplinary history reflects that he has a pattern of infractions for possessing drugs/alcohol, most recently in February 2025. *See* Defendant's Disciplinary History, attached hereto as Exhibit "3." In considering all of the Section 3553 factors, the Court should decline to exercise its discretion to reduce Defendant's sentence.

[SPACE INTENTIONALLY LEFT BLANK]

WHEREFORE, the government respectfully requests the Court deny Defendant's motion for sentence reduction based on the foregoing.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Ilana R. Malkin*

Ilana R. Malkin
Assistant United States Attorney
Court ID No.: A5503170
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9170
Email: Ilana.Malkin@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. The document and its attachments will be sent by United States Mail to *pro se* Quincy Jerome Adderly, Reg. No. 25997-104, Butner FCI #2, P.O. Box 1500, Butner, NC 27509.

/s/ *Ilana R. Malkin*
Ilana R. Malkin
Assistant United States Attorney